# HANCOCK

*v.*

# TALLEY & OTHERS.

*(Special Court of Appeals of Virginia, September, 1881.)*

[Virginia Law Journal, 1881, p. 583.]

### Real Estate—When Treated as Partnership Property—Depends on Intention.

Whether real estate held by persons who are partners is to be considered and treated as partnership property, depends upon the real intention of the vendees at the time the property is acquired or appropriated, and where it is shewn that real estate was intended to be purchased as partnership property, and appropriated to such uses—which may be done by parol—a court of equity will so dedicate it, although the property is conveyed to the partners as joint-tenants, or as tenants in common, and the obligation given for the purchase money, is the individual bond of the partners, instead of the note of the firm.

### Same—Held Jointly by Two or More Persons—Presumption—Case at Bar.

Real estate held in the joint names of two or more persons, if there be no proof that it was purchased with partnership funds and for partnership purposes, will be presumed to be held by them as joint tenants, or as tenants in common. So if it is not purchased for partnership purposes, even though it is paid for with partnership funds, and is in fact appropriated to partnership purposes, it will not be presumed to belong to the firm, but such fact may be proved, and proved by parol.

### Same—Same—Same.

Where a joint bond is given for the price, and the real estate is conveyed to the partners as joint tenants, or as tenants in common, *prima facie* it is their joint property, and not partnership property; and this legal presumption must be overcome by strong proof. In a doubtful case the deed will prevail.

1 Va Dec—28

**Same—Same—Parol Proof of Intention.**

Whilst a partnership, as such, cannot hold the legal title to real estate, which can only be conveyed to a natural person, or artificial one, as a corporation, yet a partnership may in equity own real estate, without reference to who holds the legal title, and parol evidence may be introduced to establish the real intention of the grantees, and to set up a trust in them for the benefit of the partnership; and this is so whether there was any actual payment by the grantees at the time of the purchase or not.

**Declarations of Trust.**

The provisions of the 7th and 8th sections of the English statute of frauds never were enacted in Virginia, and the law here in relation to declarations of trust, is, and always has been, the same that it was in England before the statute.

This is an appeal from the circuit court of Louisa county.

The case is fully stated in the opinion of the court.

*F. V. Winston* and *Guy & Gilliam*, for appellants.

*John Hunter, Jr.*, for appellees.

Wingfield, P., delivered the opinion of the court.

This is a suit brought by the widow of Peyton G. Talley, deceased, for the partition of a lot of land with a storehouse and dwelling house thereon, containing about two and a quarter acres of land, situate at Frederick's Hall depot, in the county of Louisa (which had been conveyed to said Talley in his lifetime and Horatio P. Hancock by Nathaniel W. Harris and wife, by deed dated the 9th of March, 1861), and for the assignment of dower to the widow of Talley in one moiety of it; or if partition could not be conveniently made, for the sale of it, and a division of the proceeds, and the assignment of her dower in the proceeds. The bill charges that the storehouse on the lot at the time of its purchase, had since been burnt down, and that Talley in his lifetime rebuilt it at an expense of $1,000 or $1,200, and that in

estimating her dower the value of the storehouse should be taken into consideration, as it greatly enhanced the value of the property.    Hancock and the heirs of Talley were made defendants.

Hancock filed a demurrer and answer to the bill, and a formal answer was put in for the heirs of Talley (who were infants) by their guardian *ad litem*.    The demurrer was contained in the answer, and merely stated that he demurred to the bill for want of equity.    The answer admits the conveyance of the property by Harris and wife to Hancock & Talley in the lifetime of the latter, but denies that the plaintiff was entitled to dower therein.    But, on the contrary, avers that in April, 1860, himself and Talley formed a partnership for the purpose of carrying on a mercantile business at Frederick's Hall, and were the successors of William A. Talley & Co., who had previously carried on business at the same place (of which firm the said Peyton G. Talley had been a partner), and for that purpose leased the property in question (which had long been used as a place of merchandise), and afterwards purchased it for the purpose of carrying on their mercantile business; that Talley and himself were equal partners, were each to put in the same amount of capital and to share equally in the profits and losses of the concern, but that in fact he, during the continuance of the partnership, put in more capital than Talley; that in March, 1861, the firm of Hancock and Talley purchased of N. W. Harris this real estate (already leased of him) at the price of $2,500; that it was distinctly purchased as partnership property, to be held as such for the purpose of carrying on the business of the firm, and with a distinct understanding between himself and Talley that it was to be paid for with partnership funds (which they expected to do in twelve months out of the profits of their business)—that this expectation was based upon the fact that having become owners of the property, they would then have the right to sell liquor, which they expected to do,

and thereby greatly increase the profits of their business, the right to do which had theretofore been denied to them by Harris when they leased the property (and who would only let them have it upon condition that they would not sell liquor), and that this privilege and right was the main inducement to their purchase of the property.   The answer further avers that on the day of its purchase he and Talley executed their joint bond for the property, with John Hancock, his father, and Jonathan Talley, a brother of Peyton G. Talley, as securities; that he was not present when the bond was written, but it was brought to him to sign by Talley, who had already signed it, when he asked why the partnership name had not been signed to it, to which he (Talley) replied, that it ought to have been so signed, but "he supposed it made no difference," remarking, at the same time, that they would soon be able to pay it out of the profits of their business, and that he, not supposing that it was material whether it was a note or a bond, also executed it; and insists that although it might have been more regular to have given a partnership note, yet, as the bond was given for a partnership debt for the purchase of property for the firm, the form in which it was given ought not to make any difference; that Harris had the deed of conveyance of the lot of land prepared by his own attorney without consulting the grantees, and without any instructions from him (Hancock), and without any knowledge of its form or contents on his part, and that he never saw it until the spring of 1868, and is advised that however it may be conveyed, whether to the partners individually, as joint tenants, or tenants in common, yet, as it was really partnership property, it will be regarded and treated by a court of equity as personal property of the partnership.   He further avers that the partnership is indebted to him and largely indebted to creditors of the firm, more than the assets belonging to it will pay, and insists that the plaintiff can have no interest in

the property in question until the debts of the firm are paid ; that judgment has been recovered on the bond given for the purchase of the property ; that Talley died insolvent, and if the pretensions of the plaintiff are sustained, he will have to pay a large debt for the property, one-half of which will be given to the estate of her husband, for the benefit of which he never paid anything. And the answer concludes with a prayer that an account may be taken of the assets and debts of the firm, and the assets may be applied to the payment of its debts, and especially to the debt due for the purchase of said real estate, and that all other accounts may be taken necessary for the winding up and settlement of the affairs of the said firm of Hancock & Talley.

The deed from Harris and wife of the one part, and Peyton G. Talley and Horatio P. Hancock of the other part, grants the lot of land to the said Talley & Hancock, "to have and to hold unto them the said Peyton G. Talley and Horatio P. Hancock, in equal shares, and to their heirs and assigns absolutely and in fee simple."

It is proved by N. W. Harris and several other witnesses, that Hancock & Talley conducted business in partnership as country merchants in the storehouse on the lot in question for a year or two before they bought it, during which time they leased it of Harris, the rent of which was paid by a credit to Harris on his store account with them. Harris, in his deposition, says that they had been renting the property of him under the firm of Hancock & Talley, and both of them, separately and together, at various times proposed discontinuing renting it, and to buy it, if he and they could agree upon the price, and finally that they did agree, and he sold it to them, and that he always considered that he sold it to them as partners ; that they wanted it to carry on their business of country merchants, and his belief was that they wanted to buy it in order to sell liquor, which he would not

permit as long as he was the owner of the property, and that they did engage in selling liquor after they bought it ; that he required that they should execute a bond for the purchase money instead of a partnership note, because he had frequently heard lawyers say that they would rather have the signatures of the individual partners to a bond than to have the signature of the firm ; that they continued to do business in the storehouse after their purchase for some time, until it was burnt down by the Yankees, and that he had the deed of conveyance prepared by Mr. Pendleton, a lawyer, but did not remember that either Hancock or Talley gave any instructions about it.

Reuben B. Davis, another witness, proved that in a conversation between himself and Talley in the summer or fall of 1861, Talley said that he and Hancock had purchased the property for the purpose of getting the restrictions removed so that they might sell liquors, and that he thought they could pay for it in two years out of the profits arising from the sale of liquors, and that subsequently both Talley and Hancock said that they were joint partners in the purchase, and made the impression on his mind that they purchased for partnership purposes.

E. A. Hancock, another witness, proved that he was with Hancock & Talley, assisting them in their store as salesman and clerk, before, at the time of, and after the purchase from Harris ; that before it was bought they spoke of buying it for the purpose of carrying on a dry goods and grocery business as a regular country store ; that while he was with them Talley came into the store one day with a bond payable to N. W. Harris, already signed by him (Talley), when Hancock remarked that as it was partnership property it ought to be signed as a firm, to which Talley replied that that "was a fact, but it did not make much difference, as they (we) would open a big liquor establishment and pay for it in a

very short time ; that the principal object of Hancock & Talley in buying the property, was to enable them to sell liquor, which they were restricted from doing before the purchase ; that in an after conversation between them, in reply to a question asked him by the witness as to how they expected to pay for the property, Talley replied that they would pay for it by what they made from the store ; that the bond was signed by John Hancock and Jonathan Talley as securities ; that when it was executed, Peyton G. Talley applied to Samuel C. Talley to sign it as security, but after P. G. Talley had signed it individually, he (Samuel C. Talley) refused, and said he would go security for the firm, and that was the way it ought to have been signed—that the bond was improperly signed, it should have been signed as a firm, as it was a partnership purchase, to which P. G. Talley replied that "it would not make any difference, as it would be paid for in a short time"; and that after the purchase it was regarded by Hancock & Talley as partnership property.

Frederick L. Harris proved that the bond given for the purchase of the lot was assigned to him, and that P. G. Talley paid interest on it to March, 1863, and again up to March, 1864, and that there was a credit entered on it for the sum of $67.89, being the amount of two store accounts which P. G. Talley held against A. W. Overton, a nephew of Harris, due to the firms of William A. Talley & Co. and Hancock & Talley, the latter of which amounted to the sum of $28.79.

J. K. Pendleton proved that he wrote the deed of conveyance at the instance of N. W. Harris as his counsel, as vendor ; that he did not remember that any specific instructions were given him in reference to the mode of conveyance ; that Hancock & Talley were merchants and partners carrying on business at Frederick's Hall, and he regarded them as partners also in the purchase of the property in which they were then carrying it on.

T. G. Trice proved that he had on several occasions heard P. G. Talley say that Hancock and himself had bought the property in partnership, and the motive for doing so was to sell liquor, the sale of which by them had been restricted before the purchase.    And Abner Harris, another witness, proved that at the request of Frederick Harris he applied to Talley for the payment or the security of the bond given for its purchase, by a deed of trust on the property at Frederick's Hall, to which he (P. G. Talley) replied that Hancock & Talley had no funds on hand to meet it, but if they could collect the debts due the firm it should be paid, and said if all of the debts due the firm were collected, they would be more than sufficient to meet all of their debts.    He objected to giving a deed of trust on the property, because it would injure his credit, but in the conversations about it he always spoke of it as Hancock & Talley's property.

Upon this state of the pleadings and proofs the cause came on to be heard, when the court overruled the demurrer and decided that the real estate conveyed by Harris and wife to Talley & Hancock, belonged to them as joint tenants, or tenants in common, and was not partnership property of the late firm of Hancock & Talley ; and that the plaintiff was entitled to dower in one moiety thereof, and appointed commissioners to make partition thereof if it could be conveniently and advantageously done, assigning one moiety to Hancock and the other to Talley's heirs, and out of the latter moiety to assign the plaintiff dower ; and if partition could not be made, upon that fact being reported, the decree provided for the sale of the land, and directed an account of all permanent improvements put upon it, either by Talley or Hancock, and an account of the rents and profits since the death of Talley.    From which Hancock obtained an appeal, and in his petition assigns, as error, that the circuit court improperly decided that the real estate in question belonged to him and Peyton G. Talley as joint tenants, or tenants in

common ; and in appointing commissioners to make partition of it and to assign the appellee dower in one moiety thereof, as the land of P. G. Talley's heirs ; and in directing an account of the improvements put upon it by either party, and of the rents since the death of Talley.

It is contended by the counsel for the appellee—

1st. That the facts proved in the case do not establish an agreement on the part of P. G. Talley and the appellant to dedicate the real estate in question to the uses and purposes of the firm of Hancock & Talley, and to hold it as the partnership property of the firm.

2d. That if the facts do shew such an agreement, it was subsequent to the date of the conveyance to them as tenants in common, and therefore cannot affect the claim of the widow of Peyton G. Talley to dower.

And 3d. Conceding that the appellant and P. G. Talley did look upon it as the partnership property of the mercantile firm of which he and Hancock were members, such verbal agreement and understanding, whether before or after the purchase, did not and could not have the effect of constituting it partnership property, so as to defeat the claim to dower of the widow of the deceased partner, in the face of the facts, that the deed to it, was made to them as tenants in common ; that an individual bond was given for the purchase money ; that the purchase was not made on partnership liability, and that the property was not paid for out of the funds of the firm ; and while conceding, that it was not necessary, in view of a court of equity, in order to constitute real estate, partnership property, that the conveyance should be to the partners, as partners. It is contended that where the deed is made to them as tenants in common, more is required than the verbal declarations, or agreement of the partners, to raise a trust for the benefit of the firm ; that

to raise such a trust, the real estate must not only be purchased for the uses and purposes of the firm, but must be paid for with partnership funds; that the foundation of the trust is the payment of the money, at the time of conveyance, and that if the party who sets up a resulting trust made no payment, he cannot be permitted to show by parol proof that the purchase was made for his benefit or on his account.

The decree must be sustained, if sustained at all, upon the last proposition, as it seems to me, that the facts proved, are overwhelming to show, that there was an agreement between the appellant and Talley to dedicate it to, and hold this real estate to the uses and purposes of the firm of Hancock & Talley, as partnership property of the firm, and that this agreement was prior to the conveyance of the land to them.

As a general rule, real estate purchased for partnership purposes and appropriated to those purposes, and paid for with partnership funds, becomes partnership property.    Nor does it matter in what manner, or by what agency it is bought, or in whose name it is held, it may be conveyed to all the partners, or one or more of them in trust for the partnership, or to a stranger under a similar trust; nor is it necessary (in this state and probably in most of the states of the Union) that the trust should be expressed (though in order to save all question about it, it would be better to be so), yet if it be wholly omitted from the conveyance, equity will always supply this want and treat the ownership as a distinct trust, if the trust exist and can be proved, and the land be, in fact and substance, partnership property; and a party holding the legal title to the land, however it may have come to him, will be held as a trustee for the partnership, if it be certain that the land was in fact their joint property as partners.    (Parsons on Partnership, 364–5; Brook v. Washington, 8 Gratt. 248; Pearce's adm'r v. Trigg's heirs, 10

Leigh 406 ; Edgar v. Donnally, 2 Munf. 387; Wheatley v. Calhoun, 12 Leigh 264 ; Davis v. Christian, 15 Gratt. 11.) But although it be held, in the joint name of two or more persons, if there be no proof that it was purchased with partnership funds, for partnership purposes, it will be considered as held by them as joint tenants, or tenants in common. So if it is not purchased for partnership purposes, even though it is paid for with partnership funds, and is in fact appropriated to partnership purposes, it will not be presumed to belong to the firm, but such fact may be proved, though it will not be presumed.

So that whether real estate held by persons who are partners is to be treated by a court of equity as partnership property, depends upon the intention of the parties when the property was acquired or appropriated. The fact that the obligation given by the parties was their joint bond instead of the note of the firm, and the manner in which the land was conveyed to Hancock & Talley is relied on by the appellees as evidence to show that they did not intend to hold the land as partners, and as rebutting that, offered by the appellant, to show that they bought and held it as partners for partnership purposes. I think the fact that a bond was given instead of the note of the firm is of very little significance, if the property was in fact bought for the firm, to be used in carrying on the business of the firm as partnership property, and agreed and intended by the partners, to be paid out of the partnership effects, and the purchase was thus on the partnership credit and responsibility, the form in which their obligation to the vendor was given could make no difference. The court will look at the real substantial transaction according to the true intent and meaning of the parties without regard to form. In this case it is evident that the bond, instead of the note of the firm, was given because the vendor required it to be given in that form—in giving it in that form the parties did not intend to change

their rights or liabilities in any respect—the same parties would have been bound for the same amount, to the same person for the same consideration, and the remark made by Talley, when it was suggested that the signature of the firm ought to have been signed to the obligation, "that it made but little difference," was very true, for it was given in behalf of the firm and for property purchased by it and for its use, it was the debt of the firm no matter in what form the members of it gave their obligation.

In the case of Brook v. Washington, above cited, the bond was given by two members of a firm of four, in their individual names, but as it was for property bought for and used by the partnership for partnership purposes, it was held to be the bond of the firm, binding on all the partners.

The deed in this case, if it conveys the land to the parties as tenants in common, as the counsel on both sides seem to consider, because in the *habendum* it is specified that the grantees are to have and to hold the same "on equal shares," though I think there may be a question as to whether or not this is so, as the deed has all the other requisites to make them joint tenants, and it is one of the incidents of a joint tenancy, that each one of them must have an equal share and interest in all and every part of the land, and the fact that it is expressed that they are to have those shares (which would be the effect of the deed without it), would not seem to change the nature of the conveyance ; if it had provided that they should hold the land in unequal shares, it would certainly then have created the grantees tenants in common.    But supposing it to create a tenancy in common, it was, as the elementary writers say, the most appropriate mode of conveying real estate for partnership purposes, and if the uses for which it was to have been held had been specified in it, it would have been as perfect as a conveyance for a partnership could have been made.

It is impossible for a partnership as such to hold the legal title to real estate, for that can only be conveyed to a natural person, or an artificial one, as a corporation.   But a partnership may in equity own real estate, without (as before stated) the least reference to the legal title, it being of no importance who holds it or how he came by it, except in so far as the facts disclose the intention of the partnership.   So it would be immaterial, whether the deed created a joint tenancy, or tenancy in common in the partners, if it was really partnership property.   They would, in either case, hold it as trustees for the partnership.   But where a joint bond is given for the price and the land is conveyed to the partners as joint tenants or tenants in common, *prima facie*, it is their joint property, and not partnership property, and in order to make it such, this legal presumption has to be overcome by proof, and if upon the proof the question is left doubtful, the deed will prevail.   This then brings us to the consideration whether parol proof may lawfully be introduced to establish the intention of the parties and to set up a trust in the grantees for the benefit of the partnership.   The counsel for the appellees have cited a number of English and New York authorities to shew that this cannot be done, unless the party claiming can set up a resulting trust, by shewing that he paid for the land at the time of the conveyance, but that where he made no payment, he cannot be allowed to shew by parol proof that the purchase was made for his benefit or on his account, and the case of Wheatley's heirs v. Calhoun, was very much relied on as an authority to the same point. The 7th section of the English statute of frauds, 29, Charles the Second, expressly provides that "all declarations or creations of trusts or confidence of any lands, tenements, or hereditaments shall be manifested and proved by some writing, signed by the party, who is by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect," and the 8th section pro-

vides that "when any conveyance shall be made of lands, &c., by which a trust of confidence may arise or result by the implication or construction of law, or be transferred or extinguished by an act or operation of law, then, and in every such case, such trust or confidence shall be of the like force and effect, as the same would have been if this statute had not been made," &c. And since this statute, the English courts have necessarily held that while a resulting trust was valid and might be enforced under the provision of the 8th section, that express declarations of trust, not in writing, were void under the 7th section ; and it is no way surprising that the New York decisions follow those of the English courts, as by the statute of that state on the subject they have a provision of like import as the English statute. In the New York statute part II., chapter 8 and title I., § 5, it enacted that "no estate or interest in lands other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law or by a deed or conveyance in writing subscribed by the party, creating, granting, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing." In delivering the opinion of the court in the case of Wheatley's heirs v. Calhoun, Judge Tucker does intimate a doubt as to whether a parol agreement of parties, to put land into their partnership, which they owned before it was formed, would not be obnoxious to the statute of frauds, but the decision in that case does not touch the point now under consideration in this case. In that case the judge said : "Considering the partnership as a third person, the titles of the individual partners, cannot be passed to it, perhaps, without violating the statute of frauds, unless it be by express agreement in writing, or unless by purchasing it with partnership funds, an implied trust in its favor is raised," but he did not decide that

if at the time they purchased the land there had been a parol agreement that it should be for the partnership, to be paid for out of the funds of the firm, and should be held by them for the use and benefit of the firm ; that this express declaration of trust, upon which it was bought and held, could not be enforced, because it was not in writing.  It would have been strange if he had so held, after his opinion in the case of The Bank of the United States v. Carrington & als., 7 Leigh 566.

The provisions of the 7th and 8th sections of the English statute of fraud never were enacted by our legislature, and were never in force in Virginia ; and the law here, in relation to declarations of trust, is, and always has been, the same that it was in England before the statute.  The four judges who sat in the case of The Bank of the United States v. Carrington & als., in the separate opinions delivered by each of them, all concurred that the law here, in this respect, had always been the same as it was before the statute of frauds, and that consequently a verbal declaration of a trust might be set up by parol proof ; and we know that it is now and always has been the constant practice of the courts of equity, throughout the entire state, to set up and enforce by proof (express) declarations of trusts not in writing and to engraft them on deeds absolute on their face, a familiar instance is that of showing by parol that a deed absolute on its face, was by a verbal agreement, intended to be a mortgage.  This, I suppose, has been done by every court in the state, having chancery jurisdiction, while the right to do so has never been questioned.  (Ross v. Norvell, 1 Wash. 14 ; Robertson v. Campbell, 2 Call 421, and Owen v. Sharp, 12 Leigh 427.)

And as the evidence clearly shews that this property here was expressly bought and conveyed to the grantees for the use and benefit of the firm, I think the grantees must be

regarded in equity as trustees, holding for the use and benefit of that firm, and that it is partnership property and must be disposed of as such.

I think also (if it were necessary for the appellant to rely on the ground), that inasmuch as the lot was bought for the partnership, and on the responsibility of the partnership, a resulting trust would arise in favor of the firm to have the land conveyed to the use of the firm.

I am of the opinion to reverse the decree of the circuit court, and remand the cause back, with instructions to cause the bill to be amended so as to make the personal representative of Peyton G. Talley a party, direct on account of the partnership, and of the debts due by it to be taken ; also, all proper accounts of improvements put on the property by either partner, since the firm was dissolved or ceased to do business, and of the rents and profits of the same since that time, and direct the property to be sold, if it has not already been done, under the proceedings in the case ; and after the payment of the debts of the firm, cause the residue (if any) of the proceeds of the sale of the real estate to be divided, assigning to the plaintiff dower in such share of it as may be due to her husband's estate.

BARTON and McLAUGHLIN, Js., concurred in the opinion of WINGFIELD, P.

Decree reversed.